UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| BRIDGETE A. CUMMINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 4:22-CV-2-PPS |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Bridgete Cummins, a 45 year old woman, appeals the Social Security

Administration's decision to deny her application for disability and disability insurance

benefits. Cummins had her first heart attack at the age of 38 and has coronary artery

disease resulting in serious heart issues. She has had triple bypass surgery and a

number of other serious cardiac related procedures. Seemingly as a result of her fragile

heart condition as well as the suicide of her ex-husband in her presence, she also suffers

from severe anxiety, panic attacks and mood disorders. [Tr. at 66, 82, 917, 13-14.][1] An

administrative law judge (ALJ) found that Cummins was not disabled within the

meaning of the Social Security Act and that she had the residual functional capacity

(RFC) to perform sedentary work with a number of additional restrictions. [Tr. at 16.]

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 6.

Cummins challenges the ALJ's decision on three main grounds.  First, she contends the ALJ erred at Step Three in evaluating Cummins' coronary artery disease under Listing 4.04 (Ischemic Heart Disease); second, she claims the Appeals Council erred in failing to evaluate new mental health evidence; and third, she argues the ALJ erred in determining her RFC.  Because I find the ALJ failed to properly evaluate Cummins' severe coronary artery disease under Listing 4.04, I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

### Discussion

The ALJ found that Cummins has severe impairments relating to her heart (among other things) including hyperlipidemia; and coronary artery disease, status-post coronary bypass graft surgery with stenting and with angina. [Tr. at 13-14.]  At the hearing held on November 18, 2020, relative to the issues with her heart, Cummins testified that she has daily chest pain and profuse sweating. [Tr. 136.]  When her chest hurts, she needs to sit down because she doesn't know if she is going to pass out.  *Id.*  When she is anxious or does strenuous things, Cummins claims this triggers her chest pain.  *Id.*  If she has chest pain that occurs more than once a day, she really can't do anything other than be in bed. [Tr. 137.]  She is on medication, and her cardiologist has advised Cummins to reduce her stress.  *Id.*

Cummins also testified that she has anxiety and panic disorders — her heart races, she gets dizzy and short of breath. [Tr. 143.]  She is on medication for her mental health and receives counseling for that as well. [Tr. 144.]  Cummins estimates she only

2

sleeps three hours at most, on a good night. [Tr. 144-45.]  She wakes up due to

nightmares. [Tr. 145.]  Cummins describes a "good day" where she can concentrate

enough to do simple chores — even if she can only do it for five or ten minutes, and

then has to sit down.  *Id.*   On bad days, she can't get out of bed and doesn't want to see

anyone. [Tr. 145-46.]  She usually has two good days in a week, and the remainder are

bad days. [Tr. 146.]  Cummins also has memory and concentration issues. [Tr. 147.]  She

testified she could sit in a chair for thirty minutes at the most, and stand maybe fifteen

minutes. [Tr. 148.]

Before diving into the issue presented, let's start with a review of the legal

framework.  I am not supposed to determine from scratch whether or not Cummins is

disabled.  Rather, I only need to determine whether the ALJ applied the correct legal

standards and whether the decision is supported by substantial evidence.  *See* 42 U.S.C.

§ 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d

923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  My review

of the ALJ's decision is deferential.  This is because the "substantial evidence" standard

is not a particularly rigorous one.  In fact, the Supreme Court announced long ago that

the standard is even less than a preponderance-of-the-evidence standard.  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  Of course, there has to be more than a "scintilla" of

evidence.  *Id.*  So in conducting my review, I cannot "simply rubber-stamp the

Commissioner's decision without a critical review of the evidence."  *Clifford v. Apfel*, 227

F.3d 863, 869 (7th Cir. 2000).  Nonetheless, the review is a light one and the substantial

evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

There are certain categories of disease and illness that render someone automatically disabled. These are called "Listings." Cummins argues that the ALJ erred in his discussion and analysis of the Listings. [DE 14 at 15-18.] Specifically, she contends the ALJ erred by failing to articulate why Cummins' coronary heart disease did not meet or equal Listing 4.04. A claimant whose impairment meets or equals one found in the Listing of Impairments is presumptively eligible for benefits. *See* 20 C.F.R. § 404.1520(d). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (internal quotation marks and citation omitted). If an ALJ "provides nothing more than a superficial analysis, reversal and remand is required." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

To meet or equal the criteria of Listing 4.04, ischemic heart disease, paragraph C provides as follows:

> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>
> 1. Angiographic evidence showing:

        a.        50 percent or more narrowing of a nonbypassed left main coronary artery; or

        b.        70 percent or more narrowing of another nonbypassed coronary artery; or

        c.        50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

        d.        50 percent or more narrowing of at least two nonbypassed coronary arteries; or

        e.        70 percent or more narrowing of a bypass graft vessel; and

    2.    *Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.*

*See* 20 C.F.R. § 404(P), App. 1, ¶ 4.04C (emphasis added).

The ALJ stated in his opinion that in making the finding that Cummins' impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments, "the undersigned considered listings 2.00 (et al), 3.00 (et al), 4.04, 11.14 and Social Security Ruling 19-2p. This finding, as to the claimant not meeting or equaling a Listing, is consistent with the soon to be discussed State agency consultant opinions." [Tr. 14.] This is the totality of the ALJ's analysis involving Listing 4.04. And this is simply deficient.

The Commissioner concedes (as she must) that the ALJ's discussion of Listing 4.04 was "admittedly brief." [DE 15 at 6.] She argues nonetheless that "[t]he ALJ expressly considered evidence from the State agency medical consultants who signed form SSA 831-U3 in opining that Plaintiff was not disabled." [DE 15 at 6.] But the ALJ

certainly did not articulate that he had "expressly considered evidence from the medical

consultant." Instead, he merely stated his finding was consistent with the state agency

consultant opinions. [Tr. 14.]  More importantly, the state agency consultants, Dr.

Wenzler and Dr. JV Corcoran, found that Cummins had the medically determinable

impairment of ischemic heart disease, but they made no mention of Listing 4.04 in their

disability determinations — they did not address at all how they would analyze

Cummins' heart disease under that listing. [Tr. 165-180, 183-198.]  Both Dr. Wenzler and

Dr. Corcoran stated in their evaluations that the "adult listings considered" for

psychiatric listings were 12.06 and 12.08, but completely absent is any mention of

considering Listing 4.04. [Tr. 173, 191.]  The Commissioner argues the state agency

medical consultants' signature alone on the SSA-831-U3 form in determining Cummins

was not disabled serves as a basis for the ALJ's conclusion. [DE 15 at 6.]  But the case

cited by the Commissioner, *Fox v. Heckler*, 776 F.2d 738, 742 (7th Cir. 1985) (emphasis

added), merely states that a state agency consultant's signature on the Form SSA-831-

U5 "is proof that a physician designated by the Secretary has considered the question of

whether the claimant's impairments are medically equivalent to an impairment as

described in the Listing of Impairments."  Here, the state agency consultants did not

mention any consideration of Listing 4.04 in their analysis of disability, thus, their

signatures on the forms finding no disability were not substantial evidence for the ALJ

to rely upon in his finding that 4.04 was not met.

6

Next, the Commissioner, recognizing the weakness of trying to defend the ALJ's

cursory analysis of Listing 4.04, contends that any error "would be harmless, as Plaintiff

has not shown that such discussion could have resulted in a finding that her

impairments met or equaled this listing." [DE 15 at 6.]  I'm not sure about that.  Listing

4.04C requires coronary artery disease as shown by certain angiographic evidence and

that results in "very serious limitations in the ability to independently initiate, sustain,

or complete activities of daily living." *See* 20 C.F.R. § 404(P), App. 1, ¶ 4.04C.  Cummins

argues (and the Commissioner does not contest) that the first requirement of 4.04C is

satisfied because a July 24, 2019 angiography shows that Cummins' left anterior

descending artery was grafted; the branch graft failed and extensive disease resulted;

the left anterior descending artery showed a long segment of a prior stent that had re-

stenosed at 30% to 40%, but following that segment showed 90% disease. [Tr. 1023-24.]

And the right coronary artery showed 80% disease, in-stent restenosis in the distal

section of the mid right coronary artery. [Tr. 1024.]  Cummins argues these coronary

valves clearly meet the Listing criteria [DE 14 at 17], and as noted, the Commissioner

does not dispute this. [DE 15 at 5-8.]

The Commissioner concentrates, instead, on the additional requirement of 4.04C

— that Cummins' impairment does not result in serious limitations on the ability to

complete activities of daily living. [DE 15 at 6-7.]  Believing her primary limiting factor

is her mental impairments, not her coronary artery disease, the Commissioner argues

her impairments do not satisfy Listing 4.04C. [DE 15 at 7.]  I don't think this is a fair characterization — that Cummins' restrictions and limitations stem only from her mental impairments.   Rather, due to the coronary issues that progressed after open heart surgery in 2017, Cummins lives a limited life — as she described in her own words during the hearing before the ALJ.  She still has daily chest pain, profuse sweating, and her blood pressure fluctuates throughout the day. [Tr. 135-36.]  Her chest pain occurs at least once a day, and sometimes 3-4 times a day, and is so bad she has to sit down because she doesn't know if she is going to pass out. [Tr. 136.]  Any kind of anxiety or strenuous activity triggers her chest pain.  *Id.*  Cummins has multiple debilitating days a week where she can't even get out of bed. [Tr. 137, 146.] Cummins testified that "[o]n a bad day I get up and I can tell that my anxiety's bad because all in my head all I think about is dying." [Tr. 149.]  Due to her anxiety, Cummins only gets about three hours of sleep on a good night. [Tr. 145.] Cummins also testified that she has difficulty concentrating and that side effects of her medication include nausea, dizziness, weakness, fatigue, insomnia, and shakiness. [Tr. 147.] The ALJ did not even address the issue of whether Cummins had a very serious limitation in her ability to complete daily activities of living.  But I think her testimony and the other medical evidence plausibly demonstrates that Cummins is so limited.  In any event, I certainly cannot come to the conclusion that there is harmless error in not discussing the issue in the face of such strong evidence.

In sum, the ALJ did not sufficiently explain why he dismissed listing 4.04C, which is seemingly right on point for Cummins' severe coronary artery disease. As the Seventh Circuit has stated, "[t]his is the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935-36; *see also Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) (concluding the ALJ's "two-sentence consideration of the Listing of Impairments [was] inadequate and warrant[ed] remand."); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (reversing where ALJ's Listing analysis was "devoid of any analysis that would enable meaningful judicial review.").

Under these circumstances, I can't say that substantial evidence supports the ALJ's determination, or that the step three analysis with regard to Listing 4.04 was sufficient. The record supports a need to fully analyze whether Cummins met or equaled Listing 4.04. Accordingly, the matter must be remanded.

* * *

Because I am remanding this case for the reasons stated above, I need not discuss the remaining two issues raised by Cummins - that the Appeals Council erred in failing to evaluate new mental health evidence and the ALJ erred in determining her RFC. Cummins can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final

decision is REVERSED and this case is REMANDED to the Social Security

Administration for further proceedings consistent with this opinion.

ENTERED: December 5, 2022.

 /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT